1  LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
2  SHAWN A. WILLIAMS (213113)
   100 Pine Street, Suite 2600
3  San Francisco, CA  94111          **E-Filing**
   Telephone: 415/288-4545
4  415/288-4534 (fax)
   shawnw@lerachlaw.com
5      – and –
   WILLIAM S. LERACH (68581)
6  DARREN J. ROBBINS (168593)
   TRAVIS E. DOWNS III (148274)
7  655 West Broadway, Suite 1900          THE WEISER LAW FIRM, P.C.
   San Diego, CA  92101                   ROBERT B. WEISER
8  Telephone: 619/231-1058                121 N. Wayne Avenue, Suite 100
   619/231-7423 (fax)                     Wayne, PA  19087
9  billl@lerachlaw.com                    Telephone: 610/225-2677
   darrenr@lerachlaw.com                  610/225-2678 (fax)
10 travisd@lerachlaw.com                  rw@weiserlawfirm.com

11 Attorneys for Plaintiff

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14 RALPH D. WILDER, Derivatively on Behalf )
   of SONIC SOLUTIONS,                    )
15                                         )   No.
                    Plaintiff,            )   VERIFIED SHAREHOLDER DERIVATIVE
16                                         )   COMPLAINT FOR VIOLATION OF THE
        vs.                               )   FEDERAL SECURITIES LAWS AND
17                                         )   STATE LAW CLAIMS FOR BREACH OF
   ROBERT J. DORIS, DAVID C. HABIGER,    )   FIDUCIARY DUTY, ABUSE OF
18 MARY C. SAUER, A. CLAY LEIGHTON,      )   CONTROL, CONSTRUCTIVE FRAUD,
   MARK ELY, ROBERT M. GREBER, PETER )   CORPORATE WASTE, UNJUST
19 J. MARGUGLIO and R. WARREN            )   ENRICHMENT, GROSS
   LANGLEY,                              )   MISMANAGEMENT AND ACTION FOR
20                                         )   ACCOUNTING
                    Defendants,           )
21                                         )
        – and –                           )
22                                         )
   SONIC SOLUTIONS, a California          )
23 corporation,                           )
                                          )
24                  Nominal Defendant.    )
   _____)   DEMAND FOR JURY TRIAL
25

26

27

28

## NATURE OF THE ACTION

1.    This is a shareholder derivative action brought by a shareholder of Sonic Solutions ("Sonic" or the "Company") on behalf of the Company against its entire Board of Directors and certain current officers and former top officers and/or directors (collectively, "Defendants"). This action seeks to remedy Defendants' violations of federal and state law, including breaches of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement, arising out of a scheme and wrongful course of business whereby Defendants allowed senior Sonic insiders to divert hundreds of millions of dollars of corporate assets to themselves via the manipulation of grant dates associated with hundreds of thousands of stock options granted to Sonic insiders. Each of the Defendants also participated in the concealment of the backdating option scheme complained of herein and/or refused to take advantage of the Company's legal rights to require these senior insiders to disgorge the hundreds of millions in illicitly obtained incentive compensation and proceeds diverted to them since 2001.

2.    Between 2001 and 2006, Defendants also caused Sonic to file false and misleading statements with the Securities and Exchange Commission ("SEC"), including Proxy Statements filed with the SEC which stated that the options granted by Sonic carried with them an exercise price that was not less than the fair market value of Sonic stock on the date of grant and issuance.

3.    In fact, Defendants were aware that the practices employed by the Board allowed the stock option grants to be backdated to dates when the Company's shares were trading at or near the lowest price for that relevant period. By the beginning of February 2007, Defendants' backdating scheme had yielded stock option grants to the Company's executive officers worth millions of dollars, contributing to their ability to sell $43 million worth of their Sonic stock.

4.    Sonic's financial results as reported and filed with the SEC were false. Defendants' misrepresentations and wrongful course of conduct violated the Securities Exchange Act of 1934 (the "Exchange Act"), as well as California law. By authorizing and/or acquiescing in the stock option backdating scheme, Defendants: (i) caused Sonic to issue false statements; (ii) diverted hundreds of millions of dollars of corporate assets to senior Sonic executives; and (iii) subjected Sonic to potential liability from regulators, including the SEC and the IRS.

5.    Defendants' gross mismanagement and malfeasance over the past decade has exposed Sonic and its senior executives to criminal and civil liability for issuing false and misleading financial statements. Specifically, Defendants caused or allowed Sonic to issue statements that failed to disclose or misstated the following: (i) that the Company had problems with its internal controls that prevented it from issuing accurate financial reports and projections; (ii) that because of improperly recorded stock-based compensation expenses, the Company's financial results violated Generally Accepted Accounting Principles ("GAAP"); and (iii) that the Company's public disclosures presented an inflated view of Sonic's earnings and earnings per share.

6.    Defendants' malfeasance and mismanagement during the relevant period has wreaked hundreds of millions of dollars of damages on Sonic. The Company's senior executives were incentivized to over-pay themselves, to profit from their misconduct by cashing in on under-priced stock options and to issue false financial statements to cover up their misdeeds. Defendants' breaches of fiduciary duties in the administration of the Company's stock option plans so polluted the plans with grant date manipulations as to void all grants made pursuant to the plans. This action seeks recovery for Sonic against these faithless fiduciaries, as Sonic's Board of Directors, as currently composed, is simply unable or unwilling to do so.

## INTRADISTRICT ASSIGNMENT

7.    A substantial part of the events or omissions which give rise to the claims in this action occurred in the county of Marin and as such this action is properly assigned to the San Francisco or Oakland division of this Court.

## JURISDICTION AND VENUE

8.    The claims asserted herein arise under §14(a) of the Exchange Act, 15 U.S.C. §78n(a), and under California law for breach of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement. In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail and the facilities of a national securities market.

1        9.     This Court has subject matter jurisdiction pursuant to §27 of the Exchange Act, 15

2    U.S.C. §78aa, as well as 28 U.S.C. §1331. This Court also has supplemental jurisdiction over the

3    state law claims asserted herein pursuant to 28 U.S.C. §1367.

4        10.    This action is not a collusive one to confer jurisdiction on a court of the United States

5    which it would not otherwise have.

6        11.    Venue is proper in this district pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa,

7    as well as 28 U.S.C. §1391(b). Many of the acts charged herein, including the preparation and

8    dissemination of materially false and misleading information, occurred in substantial part in this

9    District. Sonic is located in and conducts its business in this District. Further, Defendants conduct

10   business in this District, and certain of the Defendants are citizens of California and reside in this

11   District.

12                               **PARTIES**

13       12.    Plaintiff Ralph D. Wilder is, and at relevant times was, a shareholder of Sonic.

14       13.    Nominal party Sonic is a California corporation with its principal executive offices

15   located at 101 Rowland Way, Suite 110, Novato, California. Sonic develops and markets computer

16   software related to digital media, such as data, photographs, audio and video in digital formats.

17       14.    Defendant David C. Habiger ("Habiger") has served as President and Chief Operating

18   Officer ("COO") of Sonic since April 2005 and additionally as Chief Executive Officer ("CEO") of

19   the Company since September 2005. Habiger joined the Company in 1993 and served in a variety of

20   sales and management positions until his promotion in April 2005. Because of Habiger's positions,

21   he knew the adverse non-public information about the business of Sonic, as well as its finances,

22   markets and present and future business prospects, via access to internal corporate documents,

23   conversations and connections with other corporate officers and employees, attendance at

24   management meetings and via reports and other information provided to him in connection

25   therewith. During the relevant period, Habiger participated in the issuance of false and misleading

26   statements, including the preparation of the false and/or misleading press releases and SEC filings.

27       15.    Defendant Robert J. Doris ("Doris") co-founded Sonic in 1986 and has served as the

28   Company's Chairman of the Board and a director since its inception. Doris additionally served as

the Company's President from its inception until April 2005, and its CEO from the Company's inception until September 2005. Because of Doris's positions, he knew the adverse non-public information about the business of Sonic, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the relevant period, Doris participated in the issuance of false and misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Based on his knowledge of material non-public information regarding the Company, defendant Doris violated Cal. Corp. Code §§25402 and 25502.5 by selling 1.03 million shares of Sonic stock for proceeds of over $17.6 million during the relevant period.

16.    Defendant A. Clay Leighton ("Leighton") has served as Chief Financial Officer ("CFO") of Sonic since January 1999, and additionally as Executive Vice President since September 2006. Leighton joined the Company in 1993 as Vice President, Finance and was named Senior Vice President, Worldwide Sales and Finance from January 1999 until September 2006. Because of Leighton's positions, he knew the adverse non-public information about the business of Sonic, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. Defendant Leighton, by his specialized financial expertise, was in a unique position to understand the business of Sonic, as well as its finances, markets and present and future business prospects. During the relevant period, Leighton participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Based on his knowledge of material non-public information regarding the Company, defendant Leighton violated Cal. Corp. Code §§25402 and 25502.5 by selling 341,000 shares of Sonic stock for proceeds of over $5.2 million during the relevant period.

17.    Defendant Mary C. Sauer ("Sauer") co-founded Sonic in 1986 and has served as a director and Secretary since its inception.  Sauer additionally served as Vice President of the Company from 1986 to September 2005 and as Senior Vice President, Marketing and Sales from February 1993 to September 2005.  Because of Sauer's positions, she knew the adverse non-public information about the business of Sonic, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to her in connection therewith.  During the relevant period, Sauer participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.  Based on her knowledge of material non-public information regarding the Company, defendant Sauer violated Cal. Corp. Code §§25402 and 25502.5 by selling 1.03 million shares of Sonic stock for proceeds of $17.6 million during the relevant period.

18.    Defendant Mark Ely ("Ely") has served as Executive Vice President, Strategy of Sonic since September 2006.  Ely joined the Company in 1992, serving in various management roles until his promotion to his current position in 2006.  Because of Ely's positions, he knew the adverse non-public information about the business of Sonic, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith.  During the relevant period, Ely participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.  Based on his knowledge of material non-public information regarding the Company, defendant Ely violated Cal. Corp. Code §§25402 and 25502.5 by selling 28,071 shares of Sonic stock for proceeds of $428,083 during the relevant period.

19.    Defendant Robert M. Greber ("Greber") has been a director of Sonic since August 1993. Because of Greber's position, he knew the adverse non-public information about the business of Sonic, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and

1   employees, attendance at Board meetings and committees thereof and via reports and other
2   information provided to him in connection therewith. As a member (Chair) of the Audit Committee,
3   defendant Greber caused or allowed the dissemination of the improper public statements described
4   herein. Defendant Greber qualifies as the committee financial expert. During the relevant period,
5   Greber participated in the issuance of false and/or misleading statements, including the preparation
6   of the false and/or misleading press releases and SEC filings. Based on his knowledge of material
7   non-public information regarding the Company, defendant Greber violated Cal. Corp. Code §§25402
8   and 25502.5 by selling 87,500 shares of Sonic stock for proceeds of $1.1 million during the relevant
9   period.

10      20.    Defendant Peter J. Marguglio ("Marguglio") has been a director of Sonic since
11  August 1986. Because of Marguglio's position, he knew the adverse non-public information about
12  the business of Sonic, as well as its finances, markets and present and future business prospects, via
13  access to internal corporate documents, conversations and connections with other corporate officers
14  and employees, attendance at Board meetings and committees thereof and via reports and other
15  information provided to him in connection therewith. As a member of the Audit Committee,
16  defendant Marguglio caused or allowed the dissemination of the improper public statements
17  described herein. During the relevant period, Marguglio participated in the issuance of false and/or
18  misleading statements, including the preparation of the false and/or misleading press releases and
19  SEC filings. Based on his knowledge of material non-public information regarding the Company,
20  defendant Marguglio violated Cal. Corp. Code §§25402 and 25502.5 by selling 20,000 shares of
21  Sonic stock for proceeds of $254,630 during the relevant period.

22      21.    Defendant R. Warren Langley ("Langley") has been a director of Sonic since June
23  2001. Because of Langley's position, he knew the adverse non-public information about the
24  business of Sonic, as well as its finances, markets and present and future business prospects, via
25  access to internal corporate documents, conversations and connections with other corporate officers
26  and employees, attendance at Board meetings and committees thereof and via reports and other
27  information provided to him in connection therewith. As a member of the Audit Committee,
28  defendant Langley caused or allowed the dissemination of the improper public statements described

1   herein. During the relevant period, Langley participated in the issuance of false and/or misleading
2   statements, including the preparation of the false and/or misleading press releases and SEC filings.
3   Based on his knowledge of material non-public information regarding the Company, defendant
4   Langley violated Cal. Corp. Code §§25402 and 25502.5 by selling 38,000 shares of Sonic stock for
5   proceeds of $696,462 during the relevant period.

6       22.    The defendants identified in ¶¶15, 17 and 19-21 are referred to herein as the "Director
7   Defendants." The defendants identified in ¶¶14 and 16-18 are referred to herein as the "Officer
8   Defendants." The defendants identified in ¶¶15-21 are referred to herein as the "Insider Selling
9   Defendants."

10                              **DEFENDANTS' DUTIES**

11      23.    Each officer and director of Sonic named herein owed the Company and Sonic
12   shareholders the duty to exercise a high degree of care, loyalty and diligence in the management and
13   administration of the affairs of the Company, as well as in the use and preservation of its property
14   and assets. The conduct of Sonic's directors and officers complained of herein involves knowing,
15   intentional and culpable violations of their obligations as officers and directors of Sonic. Further, the
16   misconduct of Sonic's officers has been ratified by Sonic's Board, which has failed to take any legal
17   action on behalf of the Company against them.

18      24.    By reason of their positions as officers, directors and fiduciaries of Sonic and because
19   of their ability to control the business and corporate affairs of the Company, the Defendants owed
20   Sonic and its shareholders fiduciary obligations of candor, trust, loyalty and care, and were required
21   to use their ability to control and manage Sonic in a fair, just, honest and equitable manner, and to
22   act in furtherance of the best interests of Sonic and its shareholders so as to benefit all shareholders
23   equally and not in furtherance of their personal interest or benefit. In addition, as officers and/or
24   directors of a publicly held company, the Defendants had a duty to refrain from utilizing their control
25   over Sonic to divert assets to themselves via improper and/or unlawful practices. Defendants also
26   had a duty to promptly disseminate accurate and truthful information with respect to the Company's
27   operations, earnings and compensation practices.

28

25.    Because of their positions of control and authority as directors or officers of Sonic, each of the Defendants was able to and did, directly and indirectly, control the wrongful acts complained of herein. As to the Director Defendants, these acts include: (i) agreement to and/or acquiescence in Defendants' option backdating scheme; and (ii) willingness to cause Sonic to disseminate false Proxy Statements for 2001-2005, which Proxy Statements failed to disclose Defendants' option backdating scheme and omitted the fact that executive officers were allowed to backdate their stock option grants in order to manipulate the strike price of the stock options they received. Because of their positions with Sonic, each of the Defendants was aware of these wrongful acts, had access to adverse non-public information and was required to disclose these facts promptly and accurately to Sonic shareholders and the financial markets but failed to do so.

26.    Between 2001 and 2005, Defendants repeated in each Proxy Statement that the stock option grants made during that period carried an exercise price that was *not less than* the fair market value of Sonic stock on the date granted, as calculated by the public trading price of the stock at the market's close on that date. However, Defendants concealed until the beginning of February 2007 that the stock option grants were repeatedly and consciously *backdated* to ensure that the strike price associated with the option grants was at or near the lowest trading price for that fiscal period. Due to Defendants' breach of their fiduciary duty in the administration of the stock option plans, plaintiff seeks to have the directors' and officers' plans voided and gains from those plans returned to the Company. In the alternative, plaintiff seeks to have all of the unexercised options granted to Defendants between 2001 and 2005 cancelled, the financial gains obtained via the exercise of such options returned to the Company and to have Defendants revise the Company's financial statements to reflect the truth concerning these option grants.

27.    To discharge their duties, the directors of Sonic were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the business and financial affairs of Sonic. By virtue of such duties, the officers and directors of Sonic were required, among other things, to:

1          (a)    manage, conduct, supervise and direct the business affairs of Sonic in
2    accordance with all applicable law (including federal and state laws, government rules and
3    regulations and the charter and bylaws of Sonic);

4          (b)    neither engage in self-dealing nor knowingly permit any officer, director or
5    employee of Sonic to engage in self-dealing;

6          (c)    neither violate nor knowingly permit any officer, director or employee of
7    Sonic to violate applicable laws, rules and regulations;

8          (d)    remain informed as to the status of Sonic's operations, including its practices
9    in relation to the cost of allowing the pervasive backdating and improperly accounting for such, and
10    upon receipt of notice or information of imprudent or unsound practices, to make a reasonable
11    inquiry in connection therewith, and to take steps to correct such conditions or practices and make
12    such disclosures as are necessary to comply with the U.S. federal securities laws and their duty of
13    candor to the Company's shareholders;

14          (e)    prudently protect the Company's assets, including taking all necessary steps to
15    recover corporate assets (cash, stock options) improperly paid to Company executives and directors
16    together with the related costs (professional fees) proximately caused by the illegal conduct
17    described herein;

18          (f)    establish and maintain systematic and accurate records and reports of the
19    business and affairs of Sonic and procedures for the reporting of the business and affairs to the Board
20    of Directors and to periodically investigate, or cause independent investigation to be made of, said
21    reports and records;

22          (g)    maintain and implement an adequate, functioning system of internal legal,
23    financial and accounting controls, such that Sonic's financial statements – including its expenses,
24    accounting for stock option grants and other financial information – would be accurate and the
25    actions of its directors would be in accordance with all applicable laws;

26          (h)    exercise control and supervision over the public statements to the securities
27    markets and trading in Sonic stock by the officers and employees of Sonic; and

28

1         (i)      supervise the preparation and filing of any financial reports or other

2 information required by law from Sonic and to examine and evaluate any reports of examinations,

3 audits or other financial information concerning the financial affairs of Sonic and to make full and

4 accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set

5 forth above.

6      28.     Each Defendant, by virtue of his or her position as a director and/or officer, owed to

7 the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of

8 due care and diligence in the management and administration of the affairs of the Company, as well

9 as in the use and preservation of its property and assets. The conduct of the Defendants complained

10 of herein involves a knowing and culpable violation of their obligations as directors and/or officers

11 of Sonic, the absence of good faith on their part, and a reckless disregard for their duties to the

12 Company and its shareholders, which Defendants were aware or should have been aware posed a

13 risk of serious injury to the Company. The conduct of the Defendants who were also officers and/or

14 directors of the Company during the relevant period has been ratified by the Director Defendants

15 who comprised Sonic's entire Board during the relevant period.

16      29.     Defendants breached their duties of loyalty and good faith by allowing or by

17 themselves causing the Company to misrepresent its financial results and prospects, as detailed

18 herein *infra*, and by failing to prevent the Defendants from taking such illegal actions. As a result,

19 Sonic has expended and will continue to expend significant sums of money. Such expenditures

20 include, but are not limited to:

21         (a)     improvidently paid executive compensation;

22         (b)     increased capital costs as a result of the loss of market capitalization and the

23 Company's damaged reputation in the investment community;

24         (c)     costs incurred to carry out internal investigations, including legal fees paid to

25 outside counsel; and

26         (d)     incurring possible IRS penalties for improperly reporting compensation.

27      30.     These actions have irreparably damaged Sonic's corporate image and goodwill. For

28 at least the foreseeable future, Sonic will suffer from what is known as the "liar's discount," a term

1 applied to the stocks of companies who have been implicated in illegal behavior and have misled the

2 investing public, such that Sonic's ability to raise equity capital or debt on favorable terms in the

3 future is now impaired.

### AIDING AND ABETTING AND CONCERTED ACTION

5       31.    In committing the wrongful acts alleged herein, Defendants have pursued or joined in

6 the pursuit of a common course of conduct, and have acted in concert with one another in

7 furtherance of their common plan or design. In addition to the wrongful conduct herein alleged as

8 giving rise to primary liability, Defendants further aided and abetted and/or assisted each other in

9 breach of their respective duties.

10       32.    At relevant times, Defendants collectively and individually initiated a course of

11 conduct which was designed to and did: (i) conceal the fact that the Company was over-paying its

12 directors, officers and employees and improperly misrepresenting its financial results, in order to

13 allow Defendants to artificially inflate the price of the Company's shares; (ii) maintain Defendants'

14 executive and directorial positions at Sonic and the profits, power and prestige which Defendants

15 enjoyed as a result of these positions; and (iii) deceive the investing public, including shareholders of

16 Sonic, regarding Defendants' management of Sonic's operations, the Company's financial health

17 and stability, and future business prospects, which had been misrepresented by Defendants

18 throughout the relevant period. In furtherance of this course of conduct, Defendants collectively and

19 individually took the actions set forth herein.

20       33.    Defendants engaged in a common course of conduct commencing by at least 2001

21 and continuing thereafter. During this time, Defendants caused the Company to conceal the true fact

22 that Sonic was over-compensating its directors, officers and employees and misrepresenting its

23 financial results. In addition, Defendants also made other specific, false statements about Sonic's

24 financial performance and future business prospects, as alleged herein.

25       34.    The purpose and effect of Defendants' common enterprise and/or common course of

26 conduct was, among other things, to disguise Defendants' violations of law, breaches of fiduciary

27 duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment; to

28 conceal adverse information concerning the Company's operations, financial condition, and future

1  business prospects; and to artificially inflate the price of Sonic common stock so they could protect

2  and enhance their executive and directorial positions and the substantial compensation and prestige

3  they obtained as a result thereof.

4      35.    Defendants accomplished their common enterprise and/or common course of conduct

5  by causing the Company to purposefully, recklessly or negligently grant under-priced stock options

6  and to misrepresent its financial results. Because the actions described herein occurred under the

7  authority of the Board of Directors, each of the Defendants was a direct, necessary, and substantial

8  participant in the common enterprise and/or common course of conduct complained of herein.

9      36.    Each of the Defendants aided and abetted and rendered substantial assistance in the

10  wrongs complained of herein. In taking such actions to substantially assist the commission of the

11  wrongdoing complained of herein, each of the Defendants acted with knowledge of the primary

12  wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or

13  her overall contribution to and furtherance of the wrongdoing.

14                                  **BACKGROUND**

15      37.    Sonic engages in the development and marketing of computer software related to

16  digital media. The Company has three divisions: Professional Products, Roxio, and Advanced

17  Technology. The Professional Products division offers professional-level hardware and software

18  authoring solutions for creating packaged media releases in DVD-Video, DVD-ROM, HD DVD, and

19  BD formats. This division's products include Scenarist Workgroup; SD-series and CineVision video

20  and audio encoders; DVDit, DVDit Pro, and eDVD. This division also provides content

21  development technology, products, and services that enable professional DVD-ROM publishers to

22  create interactivity and seamless Internet connectivity for DVD-Video titles. The Roxio division

23  offers various digital media software application products under the Roxio brand name. This

24  division sells and markets its products through product bundling arrangements with original

25  equipment manufacturer suppliers of related products, as well as through its Web store and in retail

26  channels. The Advanced Technology division develops, licenses, and supplies software and

27  software components under the AuthorScript, CinePlayer and Roxio brand names to PC application

28  and consumer electronics developers. The Company's products are used in creating digital audio

1  and video titles; recording data files; editing video programs; playing DVD, HD DVD, and BD

2  discs; managing digital media on a computer or consumer electronic device file system; editing and

3  adjusting digital photographs and other images; and backing up the information contained on hard

4  disks attached to computers and consumer electronic devices.

5      38.    Throughout the relevant period, Defendants caused Sonic to grant them millions of

6  stock options permitting them to buy Sonic stock for pennies on the dollar which they could in turn

7  sell as the Company's stock price increased. A stock option gives the holder the right to buy a stock

8  at a certain price in the future. Typically, companies set that price at the same time their directors

9  approve an option grant, with an exercise price – also known as the "strike price" -- usually set at the

10  closing price of the stock that day, the closing price of the night before or by computing an average

11  of the high and low prices on the day of the vote.

12      39.    However, many of the millions of options granted to Sonic's executives had a hidden,

13  valuable component: they were misdated. often making them even more significantly valuable. The

14  misdated stock option grants fell largely into three categories: (i) "look back" grants, in which the

15  date of the grant was picked retroactively (e.g., a decision in February to pick a January date); (ii)

16  "wait and see" grants, in which a grant date was selected, but the decision was finalized – and

17  sometimes changed – at a later date (e.g., a decision on January 1 to issue a grant on January 15, but

18  there is a period after January 15 in which the grantor waits to see if a more advantageous price

19  occurs and, if one does, uses that later date instead); and (iii) grants where there was a failure to

20  complete the option grant process by the date of the grant (e.g., where there is a decision to issue a

21  grant as of a certain date, but after that date there are changes in the grantees or amounts to grantees,

22  and although the work is not complete on those grants as of the stated grant date, that date is

23  nonetheless used).

24

25

26

27

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS     - 13 -

**STOCK OPTION GRANTS**

40.    Certain of Sonic's manipulative stock option grants are described below:

**Fiscal 2002[1] Option Grants**

41.    Defendants dated many of Sonic's fiscal 2002 option grants to top executives as of July 12, 2001, at $1.12 per share – the low of the month. Within five days, the stock closed at $1.40 per share. Defendants Doris, Sauer and Leighton received 90,000, 90,000 and 40,000 options, respectively, at the $1.12 exercise price.

**Fiscal 2003 Option Grants**

42.    Defendants dated many of Sonic's fiscal 2003 option grants to top executives as of March 11, 2003, at $3.97 per share – the low of the month. Within two weeks, the stock closed above $5.00 per share. Defendant Leighton received 100,000 options at the $3.97 exercise price. Notwithstanding the fact that this purported grant occurred after the enactment of the Sarbanes-Oxley Act of 2002, which requires that all such equity transactions be reported within two days, no Form 4 was timely filed for this purported grant date.

**Fiscal 2005 Option Grants**

43.    Another post-Sarbanes-Oxley grant to Leighton was made as of May 10, 2004 at $17.49 per share. This grant was made just as Sonic announced an agreement with Microsoft which pushed the price of Sonic stock to above $19 per share within three days and to above $21 per share by the end of May 2004. Defendant Leighton received 100,000 options with the $17.49 exercise price.

44.    Below are several of Sonic's grants which occurred right before significant stock price increases:

---

[1]      Sonic's fiscal year ends March 31.

**SonicSolutions**
**April 17, 2001 - October 11, 2001**



**SonicSolutions**
**August 31, 1001 - March 1, 2002**



45. Complicating matters and magnifying the harm to Sonic, during the relevant period, Sonic's internal controls and accounting controls with respect to option grants and exercises, and its financial reporting, were grossly inadequate. The weaknesses allowed dates of both grants and exercises to be manipulated and the Company's executive compensation expenses to be materially understated. They also allowed grant dates to be changed to provide executives with more favorably priced options, in effect augmenting their compensation, with no benefit running to the Company.

46. Specifically, in many instances the reported dates Sonic stock options were granted differed from the dates on which the options appear to have been actually granted. The practice applied to the overwhelming majority of stock option grants made during the relevant period, which allowed executives and employees to make more money on their options because it set a lower "strike price" at which the options could be exercised, allowing employees to take larger profits when the stock price later rose. In almost every case of misdating, the price of Sonic shares on the reported option-grant date was lower than the share price on the actual day the options were issued.

47. Through their fiduciary duties of care, good faith and loyalty, Defendants owed to Sonic a duty to ensure that the Company's financial reporting fairly presented, in all material respects, the operations and financial condition of the Company. In order to adequately carry out these duties, it is necessary for the Defendants to know and understand the material non-public information to be either disclosed or omitted from the Company's public statements. This material non-public information included the problems Sonic faced because of its deficient internal controls. Furthermore, Defendants who were members of the Audit Committee during the relevant period had a special duty to know and understand this material information as set out in the Audit Committee's charter, which provides that the Audit Committee is responsible for reviewing, in conjunction with management, the Company's policies generally with respect to the Company's earnings press releases and with respect to financial information and earnings guidance provided to analysts and rating agencies. Defendants, as officers of Sonic during the relevant period, had ample opportunity to discuss this material information with their fellow officers at management meetings and via internal corporate documents and reports. Moreover, the defendants who were directors during the relevant period had ample opportunity to discuss this material information with fellow directors at

1   any of the scores of Board meetings that occurred during the relevant period as well as at committee

2   meetings of the Board. Despite these duties, Defendants negligently, recklessly, and/or intentionally

3   caused or allowed, by their actions or inaction, the misleading statements to be disseminated by

4   Sonic to the investing public and the Company's shareholders during the relevant period.

5       48.    Specifically, since 2001, Defendants caused Sonic to report false and misleading

6   financial results which materially understated its compensation expenses and thus overstated its

7   earnings as follows:

| Fiscal Year | Reported Earnings (Loss) (in Millions) | Reported Diluted Earnings (Loss) Per Share from Continuing Operations |
|---|---|---|
| 2001 | $(5.86) | $(0.47) |
| 2002 | $(4.18) | $(0.25) |
| 2003 | $2.54 | $0.32 |
| 2004 | $11.08 | $0.46 |
| 2005 | $8.54 | $0.76 |
| 2006 | $19.93 | $1.00 |

13      49.    Moreover, throughout the relevant period certain of the Defendants and former

14  officers exercised many of these stock options contributing to their ability to sell over $43 million

15  worth of Sonic stock they obtained often by cashing in under-priced stock options:

| DEFENDANT | DATES OF SALES | SHARES SOLD | PROCEEDS RECEIVED |
|---|---|---|---|
| DORIS | 08/22/02–01/08/07 | 1,031,000 | $17,672,635 |
| LEIGHTON | 03/02/00–08/25/05 | 341,000 | $5,240,870 |
| SAUER | 08/22/02–01/08/07 | 1,031,000 | $17,672,635 |
| ELY | 09/05/06 | 28,071 | $428,083 |
| GREBER | 02/22/00–09/07/05 | 87,500 | $1,128,765 |
| MARGUGLIO | 08/22/03–08/28/03 | 20,000 | $254,630 |
| LANGLEY | 08/04/03–09/06/05 | 38,000 | $696,462 |
| TOTAL | | 2,576,571 | $43,094,080 |

23      50.    On February 1, 2007, Sonic announced that it had initiated an internal review of its

24  historical stock option grant practices, stating in part:

> Sonic Solutions, the world leader in digital media software, announced today that it
> has commenced a voluntary review of its historical and current stock option grant
> practices and related accounting. The review was initiated by management and is
> being conducted by the audit committee of the board of directors, comprised solely
> of independent directors, with the assistance of independent legal counsel. The audit
> committee and Company management have been discussing this ongoing review
> with the Company's independent auditors and have voluntarily informed the
> Securities and Exchange Commission of the review.

Based on the review to date, the audit committee and Company management have preliminarily concluded that, under applicable accounting guidance, the Company lacks sufficient documentation for certain historical option grants and that the measurement dates associated with these option grants may need to be adjusted. Based also on this review, the Company believes that its current options granting practices are generally acceptable and meet relevant standards for properly documenting grant dates.

The audit committee continues to analyze the impact of this issue, but believes it will result in significant non-cash charges. These charges will principally affect prior fiscal years, and the Company believes that the accounting adjustments will not have any impact on previously reported cash positions or revenues. The Company has not yet determined the amount or materiality of any such non-cash charges, any resulting cash charges associated with tax issues, or accounting or other consequences. Although the timeframe for completing the review is uncertain, the Company continues to be focused on completing this review in a timely manner. Based on the preliminary conclusions of the review, the audit committee and management believe that the Company will need to restate its previously issued financial statements in order to record additional non-cash charges for stock-based compensation expense. However, given that the audit committee review is still ongoing, the audit committee has not yet determined which years or periods will need to be restated.

51.     In effect, during the relevant period, the Defendants caused Sonic's shares to trade at artificially inflated levels by issuing a series of materially false and misleading statements regarding the Company's financial statements, business and prospects. Specifically, Defendants caused or allowed Sonic to issue statements that failed to disclose or misstated the following: (i) that the Company had problems with its internal controls that prevented it from issuing accurate financial reports and projections; (ii) that because of improperly recorded stock-based compensation expenses the Company's financial results violated GAAP; and (iii) that the Company's public disclosures presented an inflated view of Sonic's earnings and earnings per share.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

52.     Plaintiff brings this action derivatively in the right and for the benefit of Sonic to redress injuries suffered and to be suffered by Sonic as a direct result of Defendants' violations of state and federal law, breaches of fiduciary duty, abuse of control, constructive fraud, gross mismanagement, corporate waste and unjust enrichment, as well as the aiding and abetting thereof, by the Defendants. This is not a collusive action to confer jurisdiction on this Court which it would not otherwise have.

53. Plaintiff will adequately and fairly represent the interests of Sonic and its shareholders in enforcing and prosecuting its rights.

54. · Plaintiff is an owner of Sonic stock and was an owner of Sonic stock during times relevant to Defendants' illegal and wrongful course of conduct alleged herein.

55. Based upon the facts set forth throughout this Complaint, a pre-filing demand upon the Sonic Board of Directors to institute this action against the officers and members of the Sonic Board of Directors is excused as futile. A pre-filing demand would be a useless and futile act because:

(a) The members of Sonic's Board have demonstrated their unwillingness and/or inability to act in compliance with their fiduciary obligations and/or to sue themselves and/or their fellow directors and allies in the top ranks of the corporation for the violations of law complained of herein. These are people they have developed professional relationships with, who are their friends and with whom they have entangling financial alliances, interests and dependencies, and therefore, they are not able to and will not vigorously prosecute any such action.

· (b) The Sonic Board of Directors and senior management participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from Sonic's stockholders or recklessly and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties. As a result of their access to and review of internal corporate documents, conversations and connections with other corporate officers, employees, and directors, and attendance at management and/or Board meetings, each of the Defendants knew the adverse non-public information regarding the improper stock option grants and financial reporting. Pursuant to their specific duties as Board members, Defendants are charged with the management of the Company and to conduct its business affairs. Defendants breached the fiduciary duties that they owed to Sonic in that they failed to prevent and correct the improper stock option granting and financial reporting. · Certain directors are also dominated and controlled by other Defendants and cannot act independently of them. Thus, the Sonic Board cannot exercise independent objective judgment in deciding whether to bring this action

1  or whether to vigorously prosecute this action because each of its members participated personally in

2  the wrongdoing or are dependent upon other Defendants who did.

3          (c)    The acts complained of constitute violations of the fiduciary duties owed by

4  Sonic's officers and directors and these acts are incapable of ratification.

5          (d)    The members of Sonic's Board have benefited, and will continue to benefit,

6  from the wrongdoing herein alleged and have engaged in such conduct to preserve their positions of

7  control and the perquisites derived thereof, and are incapable of exercising independent objective

8  judgment in deciding whether to bring this action.

9          (e)    Any suit by the current directors of Sonic to remedy these wrongs would

10  likely further expose the liability of Defendants under the federal securities laws, which could result

11  in civil and/or criminal actions being filed against one or more of the Defendants, thus, they are

12  hopelessly conflicted in making any supposedly independent determination on whether to sue

13  themselves.

14          (f)    Sonic has been and will continue to be exposed to significant losses due to the

15  wrongdoing complained of herein, yet Sonic's Board has not filed any lawsuits against Defendants

16  or others who were responsible for that wrongful conduct to attempt to recover for Sonic any part of

17  the damages Sonic suffered and will suffer thereby.

18          (g)    In order to properly prosecute this lawsuit, Sonic's directors would have to sue

19  themselves and the other Defendants, requiring them to expose themselves and their comrades to

20  millions of dollars in civil liability and/or sanctions.  This they will not do.

21          (h)    Sonic's current and past officers and directors are protected against personal

22  liability for their acts of mismanagement, waste and breach of fiduciary duty alleged in this

23  Complaint by directors' and officers' liability insurance which they caused the Company to purchase

24  for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of Sonic.

25  However, due to certain changes in the language of directors' and officers' liability insurance

26  policies in the past few years, the directors' and officers' liability insurance policies covering the

27  Defendants in this case contain provisions which eliminate coverage for any action brought directly

28  by Sonic against these Defendants, known as, *inter alia*, the "insured versus insured exclusion." As

1    a result, if these directors were to sue themselves or certain of the officers of Sonic, there would be

2    no directors' and officers' insurance protection and thus, this is a further reason why they will not

3    bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such

4    insurance coverage exists and will provide a basis for the Company to effectuate a recovery.

5              (i)    To bring this action for breaching their fiduciary duties, the members of the

6    Sonic Board would have been required to sue themselves and/or their fellow directors and allies in

7    the top ranks of the Company, who are their personal friends and with whom they have entangling

8    financial alliances, interests and dependencies, which they would not do.

9         56.    Plaintiff has not made any demand on shareholders of Sonic to institute this action

10   since such demand would be a futile and useless act for the following reasons:

11             (a)    Sonic is a publicly traded company with approximately 26 million shares

12   outstanding, and thousands of shareholders;

13             (b)    Making demand on such a number of shareholders would be impossible for

14   plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

15             (c)    Making demand on all shareholders would force plaintiff to incur huge

16   expenses, assuming all shareholders could be individually identified.

17   **THE STOCK OPTION BACKDATING SCHEME AND ITS**
     **IMPACT ON SONIC'S FINANCIAL STATEMENTS**

18   **The Fiscal 2000 Form 10-K**

19        57.    On or about June 28, 2000, the Company filed its fiscal 2000 Form 10-K with the

20   SEC. The fiscal 2000 Form 10-K was simultaneously distributed to shareholders and the public.

21   The fiscal 2000 Form 10-K included Sonic's 2000 financial statements which were materially false

22   and misleading and presented in violation of GAAP, due to improper accounting for the backdated

23   stock options. As a result, Sonic's compensation expense was understated and its net earnings were

24   overstated.

25   **The Fiscal 2001 Form 10-K**

26        58.    On or about June 27, 2001, the Company filed its fiscal 2001 Form 10-K with the

27   SEC. The fiscal 2001 Form 10-K was simultaneously distributed to shareholders and the public.

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 22 -

1   The fiscal 2001 Form 10-K included Sonic's 2001 financial statements which were materially false

2   and misleading and presented in violation of GAAP, due to its improper accounting for the

3   backdated stock options. As a result, Sonic's compensation expense was understated and its net

4   earnings were overstated.

5   **The Fiscal 2002 Form 10-K**

6       59.    On or about June 28, 2002, the Company filed its fiscal 2002 Form 10-K with the

7   SEC. The fiscal 2002 Form 10-K was simultaneously distributed to shareholders and the public.

8   The fiscal 2002 Form 10-K included Sonic's 2002 financial statements which were materially false

9   and misleading and presented in violation of GAAP, due to its improper accounting for the

10  backdated stock options. As a result, Sonic's compensation expense was understated and its net

11  earnings were overstated.

12  **The Fiscal 2003 Form 10-K**

13      60.    On or about June 26, 2003, the Company filed its fiscal 2003 Form 10-K with the

14  SEC. The fiscal 2003 Form 10-K was simultaneously distributed to shareholders and the public.

15  The fiscal 2003 Form 10-K included Sonic's 2003 financial statements which were materially false

16  and misleading and presented in violation of GAAP, due to improper accounting for the backdated

17  stock options. As a result, Sonic's compensation expense was understated and its net earnings were

18  overstated.

19  **The Fiscal 2004 Form 10-K**

20      61.    On or about June 14, 2004, the Company filed its fiscal 2004 Form 10-K with the

21  SEC. The fiscal 2004 Form 10-K was simultaneously distributed to shareholders and the public.

22  The fiscal 2004 Form 10-K included Sonic's 2004 financial statements which were materially false

23  and misleading and presented in violation of GAAP, due to improper accounting for the backdated

24  stock options. As a result, Sonic's compensation expense was understated and its net earnings were

25  overstated.

26  **The Fiscal 2005 Form 10-K**

27      62.    On or about June 29, 2005, the Company filed its fiscal 2005 Form 10-K with the

28  SEC. The fiscal 2005 Form 10-K was simultaneously distributed to shareholders and the public.

1  The fiscal 2005 Form 10-K included Sonic's 2005 financial statements which were materially false
2  and misleading and presented in violation of GAAP, due to its improper accounting for the
3  backdated stock options. As a result, Sonic's compensation expense was understated and its net
4  earnings were overstated.

5  **The Fiscal 2006 Form 10-K**

6  63.    On or about June 14, 2006, the Company filed its fiscal 2006 Form 10-K with the
7  SEC. The fiscal 2006 Form 10-K was simultaneously distributed to shareholders and the public.
8  The fiscal 2006 Form 10-K included Sonic's 2006 financial statements which were materially false
9  and misleading and presented in violation of GAAP, due to its improper accounting for the
10  backdated stock options. As a result, Sonic's compensation expense was understated and its net
11  earnings were overstated.

12              **DEFENDANTS' SCHEME BEGINS TO UNRAVEL**

13  64.    The 2001-2005 Proxy Statements concealed Defendants' option backdating scheme.
14  Thus, the Company's shareholders remained unaware of Defendants' wrongdoing when voting on
15  proxy proposals between 2001 and 2005. In fact, it was not until early February 2007 that
16  shareholders learned that the Proxy Statements which they had relied upon for years were false and
17  misleading. Defendants have been unjustly enriched at the expense of Sonic, which has received and
18  will receive less money from the Defendants when they exercise their options at prices substantially
19  lower than they would have if the options had not been backdated. Each dollar diverted to
20  Defendants via the option backdating scheme has come at the expense of the Company.

21              **THE ADVERSE IMPACT OF DEFENDANTS' MISCONDUCT**

22  65.    Unlike most companies which avoid such option backdating abuse by issuing stock
23  option grants at the same time each year, which eliminates the potential for backdating, Defendants
24  ensured that executives would not have any such restrictions. Given the many times Sonic's grants
25  were the low of the month in which options were granted, the date of their stock option grants was
26  clearly more than merely coincidental.

27  66.    As a result of the backdating of options, Defendants have been unjustly enriched at
28  the expense of Sonic, which has received and will receive less money from Defendants when they

1  exercise their options at prices substantially lower than they would have if the options had not been

2  backdated.

3  **TOLLING OF THE STATUTE OF LIMITATIONS**

4       67.    The Counts alleged herein are timely.  As an initial matter, Defendants wrongfully

5  concealed their manipulation of the stock option plans, through strategic timing and fraudulent

6  backdating, by issuing false and misleading Proxy Statements, by falsely reassuring Sonic's public

7  investors that Sonic's option grants were being administered by a committee of independent

8  directors, and by failing to disclose that backdated options were, in fact, actually issued on dates

9  other than those disclosed, and that strategically timed option grants were issued based on the

10  manipulation of insider information that ensured that the true fair market value of the Company's

11  stock was, in fact, higher than the publicly traded price on the date of the option grant.

12       68.    Sonic's public investors had no reason to know of the Defendants' breaches of their

13  fiduciary duties until February 1, 2007, when Sonic announced that it was initiating a review of its

14  purported improprieties in the issuance of stock options, stating in part:

15  > Sonic Solutions, the world leader in digital media software, announced today that it
> has commenced a voluntary review of its historical and current stock option grant
16  > practices and related accounting. The review was initiated by management and is
> being conducted by the audit committee of the board of directors, comprised solely
17  > of independent directors, with the assistance of independent legal counsel. The audit
> committee and Company management have been discussing this ongoing review
18  > with the Company's independent auditors and have voluntarily informed the
> Securities and Exchange Commission of the review.

19
> Based on the review to date, the audit committee and Company management
20  > have preliminarily concluded that, under applicable accounting guidance, the
> Company lacks sufficient documentation for certain historical option grants and that
21  > the measurement dates associated with these option grants may need to be adjusted.
> Based also on this review, the Company believes that its current options granting
22  > practices are generally acceptable and meet relevant standards for properly
> documenting grant dates.

23
> The audit committee continues to analyze the impact of this issue, but
24  > believes it will result in significant non-cash charges. These charges will principally
> affect prior fiscal years, and the Company believes that the accounting adjustments
25  > will not have any impact on previously reported cash positions or revenues. The
> Company has not yet determined the amount or materiality of any such non-cash
26  > charges, any resulting cash charges associated with tax issues, or accounting or other
> consequences. Although the timeframe for completing the review is uncertain, the
27  > Company continues to be focused on completing this review in a timely manner.
> Based on the preliminary conclusions of the review, the audit committee and
28  > management believe that the Company will need to restate its previously issued

financial statements in order to record additional non-cash charges for stock-based compensation expense. However, given that the audit committee review is still ongoing, the audit committee has not yet determined which years or periods will need to be restated.

69.    Finally, as fiduciaries of Sonic and its public shareholders, the Defendants cannot rely on any limitations defense where they withheld from Sonic's public shareholders the facts that give rise to the claims asserted herein, *i.e.*, that the Sonic Board had abdicated its fiduciary responsibilities to oversee the Company's executive compensation practices, and that the option grant dates had been manipulated to maximize the profit for the grant recipients and, accordingly, to maximize the costs for the Company.

### COUNT I

#### Violations of §14(a) of the Exchange Act
#### Against All Defendants

70.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

71.    Rule 14a-9, promulgated pursuant to §14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

72.    The 2001-2005 Proxy Statements violated §14(a) and Rule 14a-9 because they omitted material facts, including the fact that Defendants were causing Sonic to engage in an option backdating scheme, a fact which Defendants were aware of and participated in from at least 2001.

73.    In the exercise of reasonable care, Defendants should have known that the Proxy Statements were materially false and misleading.

74.    The misrepresentations and omissions in the Proxy Statements were material to plaintiff in voting on each Proxy Statement. The Proxy Statements were an essential link in the accomplishment of the continuation of Defendants' unlawful stock option backdating scheme, as revelations of the truth would have immediately thwarted a continuation of shareholders'

1  endorsement of the directors' positions, the executive officers' compensation and the Company's
2  compensation policies.

3       75.    The Company was damaged as a result of the material misrepresentations and
4  omissions in the Proxy Statements.

5  **COUNT II**

6  **Accounting**

7       76.    Plaintiff incorporates by reference and realleges each and every allegation set forth
8  above, as though fully set forth herein.

9       77.    At all relevant times, Defendants, as directors and/or officers of Sonic, owed the
10  Company and its shareholders fiduciary duties of good faith, care, candor and loyalty.

11       78.    In breach of their fiduciary duties owed to Sonic and its shareholders, the Defendants
12  caused Sonic, among other things, to grant backdated stock options to themselves and/or certain
13  other officers and directors of Sonic.  By this wrongdoing, the Defendants breached their fiduciary
14  duties owed to Sonic and its shareholders.

15       79.    The Defendants possess complete and unfettered control over their improperly issued
16  stock option grants and the books and records of the Company concerning the details of such
17  improperly backdated stock option grants to the Defendants.

18       80.    As a result of Defendants' misconduct, Sonic has been substantially injured and
19  damaged financially and is entitled to a recovery as a result thereof, including the proceeds of those
20  improperly granted options which have been exercised and sold.

21       81.    Plaintiff demands an accounting be made of all stock option grants made to
22  Defendants, including, without limitation, the dates of the grants, the amounts of the grants, the
23  value of the grants, the recipients of the grants, the exercise date of stock options granted to the
24  Defendants, as well as the disposition of any proceeds received by the Defendants via sale or other
25  exercise of backdated stock option grants received by the Defendants.

26

27

28

1

## COUNT III

2

### Breach of Fiduciary Duty and/or Aiding and Abetting
### Against All Defendants

3

4

82.     Plaintiff incorporates by reference and realleges each and every allegation set forth

above, as though fully set forth herein.

5

6

83.     Defendants agreed to and did participate with defendants Doris and Sauer and the

7

other Defendants and/or aided and abetted one another in a deliberate course of action designed to

divert corporate assets in breach of the fiduciary duties the Defendants owed to the Company.

8

9

84.     The Defendants have violated fiduciary duties of care, loyalty, candor and

10

independence owed to Sonic and its public shareholders, have engaged in unlawful self-dealing and

have acted to put their personal interests and/or their colleagues' interests ahead of the interests of

11

Sonic and its shareholders.

12

13

85.     As demonstrated by the allegations above, Defendants failed to exercise the care

required, and breached their duties of loyalty, good faith, candor and independence owed to Sonic

14

and its public shareholders, and they failed to disclose material information and/or made material

15

misrepresentations to shareholders regarding Defendants' option backdating scheme.

16

17

86.     By reason of the foregoing acts, practices and course of conduct, the Defendants have

failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward

18

Sonic and its public shareholders.

19

20

87.     As a proximate result of Defendants' conduct, in concert with Doris and Sauer and

other insiders, Sonic has been injured and is entitled to damages.

21

## COUNT IV

22

### Abuse of Control Against All Defendants

23

88.     Plaintiff incorporates by reference and realleges each and every allegation set forth

24

above, as though fully set forth herein.

25

89.     The Defendants employed the alleged scheme for the purpose of maintaining and

26

entrenching themselves in their positions of power, prestige and profit at, and control over, Sonic,

27

and to continue to receive the substantial benefits, salaries and emoluments associated with their

28

1   positions at Sonic.  As a part of this scheme, Defendants actively made and/or participated in the

2   making of, or aided and abetted the making of, misrepresentations regarding Sonic.

3          90.     Defendants' conduct constituted an abuse of their ability to control and influence

4   Sonic.

5          91.     By reason of the foregoing, Sonic has been damaged.

6                                      **COUNT V**

7                  **Gross Mismanagement Against All Defendants**

8          92.     Plaintiff incorporates by reference and realleges each and every allegation set forth

9   above, as though fully set forth herein.

10         93.     Defendants had a duty to Sonic and its shareholders to prudently supervise, manage

11  and control the operations, business and internal financial accounting and disclosure controls of

12  Sonic.

13         94.     Defendants, by their actions and by engaging in the wrongdoing described herein,

14  abandoned and abdicated their responsibilities and duties with regard to prudently managing the

15  businesses of Sonic in a manner consistent with the duties imposed upon them by law.  By

16  committing the misconduct alleged herein, Defendants breached their duties of due care, diligence

17  and candor in the management and administration of Sonic's affairs and in the use and preservation

18  of Sonic's assets.

19         95.     During the course of the discharge of their duties, Defendants knew or recklessly

20  disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants

21  caused Sonic to engage in the scheme complained of herein which they knew had an unreasonable

22  risk of damage to Sonic, thus breaching their duties to the Company.  As a result, Defendants grossly

23  mismanaged Sonic.

24         96.     By reason of the foregoing, Sonic has been damaged.

25                                     **COUNT VI**

26                 **Constructive Fraud Against All Defendants**

27         97.     Plaintiff incorporates by reference and realleges each and every allegation set forth

28  above, as though fully set forth herein.

1    98.    As corporate fiduciaries, Defendants owed to Sonic and its shareholders a duty of

2  candor and full accurate disclosure regarding the true state of Sonic's business and assets and their

3  conduct with regard thereto.

4    99.    As a result of the conduct complained of, Defendants made, or aided and abetted the

5  making of, numerous misrepresentations to and/or concealed material facts from Sonic's

6  shareholders despite their duties to, *inter alia*, disclose the true facts regarding their stewardship of

7  Sonic. Thus they have committed constructive fraud and violated their duty of candor.

8    100.    By reason of the foregoing, Sonic has been damaged.

9                                    **COUNT VII**

10                       **Corporate Waste Against All Defendants**

11    101.    Plaintiff incorporates by reference and realleges each and every allegation set forth

12  above, as though fully set forth herein.

13    102.    By failing to properly consider the interests of the Company and its public

14  shareholders, by failing to conduct proper supervision, by giving away millions of dollars to

15  Defendants via the option backdating scheme, Defendants have caused Sonic to waste valuable

16  corporate assets.

17    103.    As a result of Defendants' corporate waste, they are liable to the Company.

18                                    **COUNT VIII**

19                       **Unjust Enrichment Against All Defendants**

20    104.    Plaintiff incorporates by reference and realleges each and every allegation set forth

21  above, as though fully set forth herein.

22    105.    As a result of the conduct described above, Defendants will be and have been unjustly

23  enriched at the expense of Sonic, in the form of unjustified salaries, benefits, bonuses, stock option

24  grants and other emoluments of office.

25    106.    All the payments and benefits provided to the Defendants were at the expense of

26  Sonic. The Company received no benefit from these payments. Sonic was damaged by such

27  payments.

28

107. Certain of the Defendants sold Sonic stock for a profit during the period of deception, misusing confidential non-public corporate information. These Defendants should be required to disgorge the gains which they have and/or will otherwise unjustly obtain at the expense of Sonic. A constructive trust for the benefit of the Company should be imposed thereon.

### COUNT IX

### Against the Officer Defendants for Rescission

108. Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

109. As a result of the acts alleged herein, the stock option contracts between the Officer Defendants and Sonic entered into during the relevant period were obtained through Defendants' fraud, deceit, and abuse of control. Further, the backdated stock options were illegal grants and thus invalid as they were not authorized in accordance with the terms of the publicly filed contracts regarding the Officer Defendants' employment agreements and the Company's stock option plan which was also approved by Sonic shareholders and filed with the SEC.

110. All contracts which provide for stock option grants between the Officer Defendants and Sonic and were entered into during the relevant period should, therefore, be rescinded, with all sums paid under such contracts returned to the Company, and all such executory contracts cancelled and declared void.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

A. Awarding money damages against all Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, to ensure Defendants do not participate therein or benefit thereby;

B. Directing all Defendants to account for all damages caused by them and all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds and imposing a constructive trust thereon;

1    C.    Directing Sonic to take all necessary actions to reform and improve its corporate

2  governance and internal control procedures to comply with applicable law, including, but not limited

3  to, putting forward for a shareholder vote resolutions for amendments to the Company's By-Laws or

4  Articles of Incorporation and taking such other action as may be necessary to place before

5  shareholders for a vote adoption of the following Corporate Governance policies:

6         (i)    a proposal requiring that the office of CEO of Sonic and Chairman of the

7  Sonic Board of Directors be permanently held by separate individuals and that the Chairman of the

8  Sonic Board meets rigorous "independent" standards;

9         (ii)    a proposal to strengthen the Sonic Board's supervision of operations and

10  develop and implement procedures for greater shareholder input into the policies and guidelines of

11  the Board;

12        (iii)    appropriately test and then strengthen the internal audit and control functions;

13        (iv)    rotate independent auditing firms every five years;

14        (v)    control and limit insider stock selling and the terms and timing of stock option

15  grants; and

16        (vi)    reform executive compensation.

17    D.    Ordering the imposition of a constructive trust over Defendants' stock options and

18  any proceeds derived therefrom;

19    E.    Awarding punitive damages;

20    F.    As to all improperly dated and/or improperly priced options that have been exercised,

21  ordering Defendants to make a payment to the Company in an amount equal to the difference

22  between the prices at which the options were exercised and the exercise prices the options should

23  have carried if they were priced at fair market value on the actual date of grant;

24    G.    As to all improperly dated and/or improperly priced options that have been granted

25  but not yet exercised or expired, ordering the Company to rescind such options so they carry the

26  exercise prices they should have carried if they were priced at fair market value on the actual date of

27  grant;

28

1    H.    Awarding costs and disbursements of this action, including reasonable attorneys',

2  accountants', and experts' fees; and

3    I.    Granting such other and further relief as this Court may deem just and proper.

4                                    **JURY DEMAND**

5    Plaintiff demands a trial by jury.

6  DATED: March 15, 2007                    LERACH COUGHLIN STOIA GELLER
                                              RUDMAN & ROBBINS LLP
7                                           SHAWN A. WILLIAMS

8

9                                           _____
                                                      SHAWN A. WILLIAMS
10
                                            100 Pine Street, Suite 2600
11                                          San Francisco, CA 94111
                                            Telephone: 415/288-4545
12                                          415/288-4534 (fax)

13                                          LERACH COUGHLIN STOIA GELLER
                                              RUDMAN & ROBBINS LLP
14                                          WILLIAM S. LERACH
                                            DARREN J. ROBBINS
15                                          TRAVIS E. DOWNS III
                                            655 West Broadway, Suite 1900
16                                          San Diego, CA 92101
                                            Telephone: 619/231-1058
17                                          619/231-7423 (fax)

18                                          THE WEISER LAW FIRM, P.C.
                                            ROBERT B. WEISER
19                                          121 N. Wayne Avenue, Suite 100
                                            Wayne, PA 19087
20                                          Telephone: 610/225-2677
                                            610/225-2678 (fax)
21
                                            Attorneys for Plaintiff
22
   S:\CptDraft\Derivative\Cpt Sonic Solutions Derv.doc
23

24

25

26

27

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 33 -

1        **CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

2        Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

3    named parties, there is no such interest to report.

4

5

6                                    ATTORNEY OF RECORD FOR PLAINTIFF
                                     RALPH D. WILDER
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SONIC SOLUTIONS CORP. VERIFICATION

I, Ralph Douglas Wilder , hereby verify that I am familiar with the allegations in the Complaint, and that I have authorized the filing of the Complaint, and that the foregoing is true and correct to the best of my knowledge, information and belief.

DATE: _3-6-2007_                _____
                                 SIGNATURE